UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Robert Cabacoff

   v.                               Civ. No. 23-cv-84-LM

FedEx Ground Package Sys., Inc.

**REPORT AND RECOMMENDATION**

    Plaintiff Robert Cabacoff has sued his former employer, FedEx Ground Package System, Inc. ("FedEx"), claiming he was wrongfully fired from his job after requesting time off to recover from a non work-related injury. Before the court is the defendant's motion to dismiss for failure to state a claim upon which relief can be granted (Doc. No. 7), to which the plaintiff has timely objected, (Doc. No. 9). See Fed. R. Civ. P. 12(b)(6). The parties have also exchanged a reply (Doc. No. 10) and surreply (Doc. No. 11). Pursuant to LR 72.1, the motion has been referred to the undersigned Magistrate Judge for a report and recommendation. For the reasons that follow, the district judge should grant the defendant's motion in part and deny it in part.

**Standard of Review**

    When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court asks whether the plaintiff has made allegations in his pleadings that are sufficient to

render his entitlement to relief plausible.  See Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).  The court accepts all well-pleaded facts as true and draws all reasonable inferences in the non-moving party's favor. Hamann v. Carpenter, 937 F.3d 86, 88 (1st Cir. 2019).  The court, however, disregards conclusory allegations that simply parrot the applicable legal standard. Manning, 725 F.3d at 43. In addition to the allegations in the complaint, the court may also consider judicially noticed documents, matters of public record, and documents attached to the complaint, without converting this 12(b)(6) motion into a motion for summary judgment.  See Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019); Greene v. Rhode Island, 398 F.3d 45, 49 (1st Cir. 2005).

## Background

Mr. Cabacoff worked for FedEx Ground as a package handler from October 2021 until his termination in July 2022.  Compl. (Doc. No. 1-1) ¶¶ 2, 11.  On July 1, 2021, he sustained an "unusual injury during a gym workout." Id. ¶ 4.  Beginning on or about July 3, 2022, the injury required Mr. Cabacoff to stay at home and miss work. Id. ¶ 5.  While he recuperated, Mr. Cabacoff reported his work absences to FedEx Ground through a "personnel/electronic e-mailing" system on a daily or near-daily basis starting July 3, 2022 and continuing for nearly 30 days. Id. ¶ 6. Mr. Cabacoff included in his report progress and

2

estimates of recovery time, as well as indicating his desire to return to work. Id. ¶¶ 7-8.

His recovery having stalled near the end of July 2022, Mr. Cabacoff attempted to send another update to FedEx, only to discover that his email access had been disabled. Id. ¶ 10. On either the same day or the next, Mr. Cabacoff was informed that his employment with FedEx had been terminated on July 13, 2022, due to job abandonment. Id. ¶ 11.

Following his termination, Mr. Cabacoff requested to review his personnel file. FedEx Ground granted this request on August 16, 2022. Id. ¶¶ 12, 14. Mr. Cabacoff, however, alleges he was shown a "stripped-down" version of his file, which was missing items he believed critical to understanding his termination. Id. ¶ 15.

On December 22, 2022, Mr. Cabacoff, proceeding pro se, filed a four-count complaint in state court. FedEx timely removed the case to this court pursuant to 28 U.S.C. § 1332. The complaint contains four claims: (I) violation of the New Hampshire Access to Personnel File statute (N.H. Rev. Stat. Ann. ("RSA") § 275:56); (II) breach of RSA § 304-C-111 (good faith and fair dealing); (III) wrongful termination; and (IV) negligent infliction of emotional distress. He seeks $313,000 in damages and an order "permanently enjoining [FedEx and]

colluders . . . from continued violation of [his] judicial rights . . . ." Compl. (Doc. No. 1-1) at 11.

## Discussion

A. Count I - Access to Personnel Files

Mr. Cabacoff claims that FedEx violated RSA 275:56 by "gutting his personnel file." Subject to exceptions not at issue here, RSA 275:56 requires employers to provide "a reasonable opportunity for any employee who so requests to inspect such employee's personnel file and further, upon request, provide such employee with a copy of all or part of such file." The term "personnel file" as used in the statute is further defined in New Hampshire's administrative code as:

> any personnel records created and maintained by an employer and pertaining to an employee including and not limited to employment applications, internal evaluations, disciplinary documentation, payroll records, injury reports and performance assessments, whether maintained in one or more locations, unless such records are exempt from disclosure under RSA 275:56, III or are otherwise privileged or confidential by law. The term does not include recommendations, peer evaluations or notes not generated or created by the employer."

N.H. Code. Admin. R. Lab. § 802.08.

FedEx first argues that Count I should be dismissed because there is no private right of action for violation of RSA 275:56. To the extent that FedEx is referring to an action for damages, it is correct. See Dolan v. SunGard Sec. Fin., LLC, Civ. No. 06-cv-43-JD, 2008 WL 1843895, at *2 (D.N.H. Apr. 23, 2008) ("RSA

4

275:56 does not explicitly provide a private cause of action for damages, and no New Hampshire cases have interpreted the statute to do so."). At the same time, however, "current and former employees can enforce their right under the statute to inspect and obtain a copy of their files . . . ." Dolan, 2008 WL 90019, at *14 (D.N.H. Jan. 8, 2008). Indeed, the New Hampshire Supreme Court has, on several occasions addressed disputes centered on RSA 275:56. See, e.g., Pivero v. Largy, 722 A.2d 461 (N.H. 1998), overruling on other grounds recognized in Provenza v. Town of Canaan, 281 A.3d 965, 973 (N.H. 2022); Rix v. Kinderworks Corp., 618 A.2d 833 (N.H. 1992).

FedEx further notes that Mr. Cabacoff concedes in his complaint that he was granted access to his file, as the statute requires. Where, as here, he takes issue with the contents of the file he was permitted to examine, FedEx argues that his relief is limited to the procedures outlined in RSA 275:56(II), wherein the employee can "submit a written statement" that must be maintained with his file.

Construing his pro se complaint broadly, as it must do at this stage of the litigation, the court finds that Mr. Cabacoff has alleged sufficient facts to proceed under RSA 275:56, but only to the extent he claims that FedEx did not "provide [him] with a copy of all or part of" his personnel file, as required by RSA 275:56(I). Therefore, the motion to dismiss Count I is

5

granted insofar as Mr. Cabacoff seeks damages for violation of RSA 275:56, and denied to the extent he is seeking a copy of his file.[1]

B. Count II – Implied Covenant of Good Faith and Fair Dealing

In Count II, Mr. Cabacoff claims that his termination violated RSA 304-C-111, part of New Hampshire's Revised Limited Liability Company Act. See RSA 304-C:1, et seq. Mr. Cabacoff does not dispute that FedEx is not a limited liability company. Therefore, RSA 304-C does not apply to FedEx. Moreover, as the elements of a claim brought by an at-will employee for breach of the common law covenant of good faith and fair dealing are the same as for a common law claim of wrongful termination, Counts II and III are duplicative. See Kertanis v. Georgia-Pacific Gypsum, LLC, Civ. No. 14-cv-343-JL, 2016 WL 3033706, at *7 (D.N.H. May 26, 2016). Count II should therefore be dismissed. The court will address Mr. Cabacoff's termination within the context of Count III.

---

[1] FedEx also argues that Mr. Cabacoff's email messages are not part of his personnel file because they were not "generated or created by" FedEx, as the administrative code requires. The court does not reach that issue as it is not clear that Mr. Cabacoff's concerns are limited to his emails.

C.  Count III – Wrongful Discharge

Under New Hampshire common law, to prevail on a claim for wrongful discharge, a plaintiff must establish three essential elements:

> (1) that h[is] employment was terminated; and
>
> (2) that the termination of h[is] employment was motivated by bad faith, retaliation, or malice; and
>
> (3) that h[is] employment was terminated because [he] performed an act that public policy would encourage or because [he] refused to do something that public policy would condemn.

Donovan v. Southern New Hampshire Univ., 293 A.3d 1175, 1178 (N.H. 2022).

FedEx argues that Mr. Cabacoff's complaint fails to allege sufficient facts to satisfy the second and third elements.  The court agrees.  As to the second element, while Mr. Cabacoff contests whether he "abandoned" his job, given his attempts at keeping FedEx abreast of his recovery, the circumstances he describes evince, at most, a breakdown in communication, rather than bad faith, retaliation or malice.  For example, Mr. Cabacoff faults FedEx "for selecting only one method of determining [his] daily attendance status," and failing to explore "other key absentee certifications," such as telephone calls, text messages or personal emails."  Complaint (Doc. 1-1) ¶¶ 24-27.  Ultimately, Mr. Cabacoff describes the chain of

7

events as "mangled joint communications," id. ¶ 29, and "administrative neglect." Id. ¶ 31.

Although his objection to FedEx's motion is short on legal argument, in his complaint, Mr. Cabacoff asserts that the alleged "administrative neglect" is sufficient to satisfy the "bad faith, retaliation, or malice" requirement of a wrongful discharge claim. Id. He cites the following definition of bad faith: "neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Id. ¶ 20 (citing Black's Law Dictionary). Mr. Cabacoff, however, focusses only on the word "neglect," while ignoring the remainder of the definition, which includes "neglect" within the ambit of "bad faith" only if it is "not prompted by an honest mistake," but "by some interested or sinister motive." Id. Here, Mr. Cabacoff has failed to allege any sort of sinister motive that would allow his claim of "administrative neglect" to satisfy the "bad faith" prong of his wrongful discharge claim.

Even if Mr. Cabacoff had alleged facts sufficient to support a claim of bad faith or malice, he has nevertheless failed to allege facts sufficient to satisfy the requirement that he was discharged because he "performed an act that public

policy would encourage or because [he] refused to do something that public policy would condemn." Donovan, 293 A.3d at 1178.[2]

Public policy in the context of a wrongful discharge claim "can be based on statutory or nonstatutory policy." Karch v. BayBank FSB, 794 A.2d 763, 775 (N.H. 2002) (quoting Cilley v. N.H. Ball Bearings, Inc., 514 A.2d 818, 821 (N.H. 1986)). Ordinarily, whether a public policy exists is a question for the jury. Short v. School Admin. Unit 16, 612 A.2d 364, 370 (N.H. 1992). But if the presence or absence of such a public policy is clear, the court may rule on its existence as a matter of law . . . ." Id.

Mr. Cabacoff not only fails to assert a public policy in support of his claim, he concedes that he was unable to find any case with a similar fact pattern in which a public policy was delineated. See Pltf. Mem. (Doc. No. 9-1) at 8 (describing claim as "unique [and] potentially precedential decision making . . . while benefitting . . . future litigations consisting of similar or identical elements."). As Judge McAuliffe recently

---

[2] FedEx argues that "terminating an at-will employee who fails to report for work . . . is not a violation of public policy." Def. Mem. (Doc. No. 7-1) at 11. This argument misses the mark, as the "public policy" element of a wrongful termination claim is rooted in the acts of the employee. See, e.g., Faulkner v. Dartmouth Hitchcock Med. Ctr., No. 12-cv-482-SM, 2015 WL 4759425, at *8 (D.N.H. Aug. 12, 2015) (noting that "a common law claim for wrongful termination focuses on conduct in which the plaintiff engaged (or refused to engage)).

9

observed, a plaintiff "must articulate the precise public policy she believes would be advanced" by her act and "identify the source of that policy." Netska v. Hubbell, Inc., No. 22-cv-265-SM, 2023 WL 199340, at *4 (D.N.H. Jan. 17, 2023). "Simply positing that it is conceivable that undefined public policy is promoted" by a plaintiff's act is insufficient. Id. So it is here. Mr. Cabacoff's failure to identify a public policy supportive of his acts leading up to his termination is fatal to his wrongful termination claim.

Moreover, to the extent that Mr. Cabacoff takes issue with the methods by which FedEx enforced its attendance policies, such an assertion cannot support a wrongful termination claim. See e.g., MacKenzie v. Linehan, 969 A.2d 385, 390 (N.H. 2009) ("Public policy does not protect "an employee's expression of disagreement with a management decision.") (quoting Short, 612 A.2d at 370. Finally, Mr. Cabacoff's attempt to link his personnel file dispute to his wrongful termination claim is unavailing, as his complaint makes clear that his termination preceded his file request. Thus his termination could not have been in retaliation for his request, even if his request was supported by New Hampshire law. Accordingly, the court should dismiss Count III, alleging wrongful termination.

D.  Negligent Infliction of Emotional Distress

In Count IV, Mr. Cabacoff asserts a claim of negligent infliction of emotion distress.  In order to avoid dismissal under Rule 12(b)(6) a plaintiff must allege: "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." Tessier v. Rockefeller, 33 A.3d 1118, 1132 (N.H. 2011) (quoting O'Donnell v HCA Health Servs. of N.H., 883 A.2d 319, 324 (N.H. 2005)).

The court need not reach the question of whether Mr. Cabacoff's complaint alleges facts sufficient to support this claim, however, because it is barred by the exclusivity provisions of New Hampshire's Worker's Compensation Act, RSA 281-A:8.  See Karch, 794 A.2d at 770 ("As a general rule, any claim based upon negligence by an employer or co-employee for personal injuries arising out of or in the course of employment is barred by RSA 281-A:8, I(b)."  Accordingly, Count IV should be dismissed.

## Conclusion

Based on the foregoing, the district judge should deny defendant's motion to dismiss (Doc. No. 7), but only to the extent that Count I alleges that Mr. Cabacoff was not provided with a copy of his personnel file.  The motion should be granted in all other respects.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion.  Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).  Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

July 11, 2023

cc:   Robert Cabacoff, pro se
      Counsel of Record